UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| YUICHIRO MIYATA, et al., | CASE NO. 3:20-cv-05519-DGE |
| Plaintiffs, | ORDER ON MOTION FOR |
| v. | DEFAULT JUDGMENT |
| EXPERIAN INFORMATION SOLUTIONS INC, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' motion for default judgment. (Dkt. No. 28.) The Court has considered Plaintiffs' motion, the exhibits and declarations attached thereto, the relevant law, and the remainder of the record.

## I.      BACKGROUND

Plaintiffs Mr. Miyata and Ms. Campbell, a married couple, bring claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Washington State Consumer Protection Act ("CPA"). (*See generally* Dkt. No. 1.) Initially, Plaintiffs named five Defendants. (Dkt. No. 1 at

4-6.)  Plaintiffs dismissed Defendant Zions Debt Holdings, LLC (Dkt. No. 23), and stipulated to dismissal of Defendant Experian Information Solutions, Inc. ("Experian") (Dkt. No. 25).  The remaining Defendants were properly served but failed to appear or respond.  (Dkt. Nos. 3 at 2-3; 6 at 1; 20 at 1; 21 at 1.)  The Clerk of the Court entered default against Mountain Run Solutions, LLC, a/k/a and d/b/a Perfection Collection, LLC, ("Mountain Run"), Christopher Carter, and Brian Fuller.  (Dkt. Nos. 20, 21.)  This motion for default judgement followed.  (Dkt. No. 28.)

Plaintiffs allege that in July 2010, they defaulted on an account held with a home security company, Monitronics/Brinks, by failing to make their monthly payment.  (Dkt. No. 1 at 7.) Plaintiffs further allege that on April 11, 2011, Monitronix/Brinks sold their $417.00 account. (*Id.*)

In 2017, Plaintiffs' debt originally owed to Monitronics/Brinks appeared on Mr. Miyata's credit reports as a collection with Southwest Credit Systems.  (Dkt. Nos. 39 at 2, 39-1 at 2-6.) The Southwest Credit Systems account was set to remain on Mr. Miyata's record until either January 2018 or March 2018.  (*See* Dkt. No. 39-1 at 4, 6.)

Plaintiffs allege that Mountain Run subsequently purchased their debt originally owed to Monitronics/Brinks.  (Dkt. No. 1 at 7.)  Plaintiffs further allege that Mountain Run furnished false account information to two credit agencies, Experian and Trans Union, LLC.[1]  (*Id.*) Specifically, Plaintiffs assert that Mountain Run changed the date of default from 2010 to 2013 so that the debt would remain on their credit report, and that Mountain Run inflated the balance

---

[1] Because Plaintiffs' claims focus on Mountain Run's credit report to Experian and Mountain Run's obligation to reinvestigate the account arising out of Plaintiffs' dispute with Experian, the Court addresses only Plaintiffs' dispute as to the erroneous information appearing on their Experian credit reports and not their Trans Union credit reports.  (*See* Dkt. No. 1 at 11 ("Trans Union, LLC conducted a reasonable reinvestigation and deleted the account from both Plaintiffs' consumer credit reports.")).

1   from $417 to $1,155, in order to pressure Plaintiffs into paying them.  (*Id.*)  Indeed, when

2   Plaintiffs reviewed their Experian credit reports in Spring 2020, both showed a collection

3   account with Mountain Run for $1,155, and Mr. Miyata's report stated the account was to remain

4   on record until January 2021.  (Dkt. Nos. 31-8 at 2; 31-9 at 14.)

5           Plaintiffs disputed the account to Experian multiple times in March 2020, explaining the

6   date of delinquency was April 11, 2011, and therefore, the debt was too old to appear on their

7   credit reports.  (*See* Dkt. Nos. 1 at 8-11; 38-1 at 8-11.)  Experian sent notices to Mountain Run

8   regarding Plaintiffs' disputes on March 8, March 10, and March 11, 2020.  (*See* Dkt. No. 38-1 at

9   8-11.)[2]  Each time, Mountain Run responded to Experian certifying that Plaintiffs' account was

10  accurate.  (*See* Dkt. Nos. 31-3 at 1; 31-4 at 1; 31-5 at 1.)  Mountain Run certified the results

11  within 24 hours of receiving notice of each of Plaintiffs' four disputes.  (*See* Dkt. No. 31-1 at 8-

12  11.)  Consequently, Plaintiffs' disputes with Experian were processed without corrections to their

13  credit reports.  (*See* Dkt. Nos. 31-3 at 1; 31-4 at 1; 31-5 at 1.)  Several months later in June 2020,

14  Plaintiffs filed this suit and Mountain Run directed Experian to remove the outdated tradeline.

15  (Dkt. No. 30 at 4-5.)

16                              **II.      DISCUSSION**

17      **A.  Jurisdiction**

18

19

20  [2] Plaintiffs' counsel issued a subpoena to Experian "to obtain the ACDVs" that Experian sent to
    Mountain Run regarding the two Plaintiffs.  (Dkt. No. 38 at 2).  Experian responded to Plaintiffs'
21  request for production by providing "the Automated Consumer Dispute Verification forms
    ("ACDV") that it sent to Mountain Run Solutions in response to disputes made by Plaintiffs[.]"
22  (Dkt. No. 38-1 at 6.)  Plaintiffs do not provide expert testimony explaining to the Court the
    significance of an ACDV.  However, because the documents provided by Experian indicate
23  notice sent to Mountain Run Solutions, and the dates of transmission, the Court considers the
    ACDVs sufficient evidence of notice of Plaintiffs' disputes sent to Mountain Run.  (*See* Dkt. No.
24  38-1 at 8-11.)

Before entering default judgment, the Court must assure that it has both subject matter and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

The Court has subject matter jurisdiction over Plaintiffs' federal FDCPA and FCRA claims because they present federal questions under 28 U.S.C. § 1331. Plaintiffs' state law claim falls within the Court's supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because the CPA claim is related to the federal claims such that they form part of the same case or controversy.

The Court's personal jurisdiction analysis begins with Washington's long-arm statute. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends personal jurisdiction "over nonresident defendants and foreign corporations as long as it complies with federal due process." *Noll v. Am. Biltrite Inc.*, 395 P.3d 1021, 1026 (Wash. 2017). Therefore, the jurisdictional analyses under state law and federal due process are the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

To exercise personal jurisdiction over a nonresident defendant under federal law, "that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

1    General jurisdiction exists where the foreign corporation's affiliations with the forum are

2    so continuous and systematic as to render the corporation essentially at home.  *Goodyear Dunlop*

3    *Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Here, Plaintiffs have not established

4    general jurisdiction as their allegations do not demonstrate that Defendants have continuous and

5    systematic affiliations with Washington state.  (*See generally* Dkt. Nos. 1, 35.)

6    Specific jurisdiction requires that: (1) the defendant purposefully directed its activities

7    towards Washington or availed itself of the privilege of conducting activities in Washington,

8    thereby invoking the benefits and protections of the laws; (2) the plaintiff's claims arise out of

9    the defendant's Washington-related contacts; and (3) the exercise of jurisdiction is reasonable.

10   *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

11   Plaintiffs allege that Mountain Run "[does business] in Washington State, pursuant to

12   UBI No. 604 206 438" as an out of state collection agency.  (Dkt. Nos. 1 at 5; 35-1 at 3.)

13   Mountain Run purchased and made attempts to collect Plaintiffs' debt while Plaintiffs resided in

14   Clark County, Washington.  (Dkt. No. 1 at 4, 7.)  Thus, Plaintiffs have sufficiently alleged that

15   Mountain Run purposely availed itself of the privilege of conducting business in Washington and

16   that their claims arise out of Mountain Run's Washington-related activities.  Accordingly, the

17   Court has personal jurisdiction over Mountain Run.

18   On the other hand, Plaintiffs have failed to establish specific personal jurisdiction over

19   Defendants Brian Fuller and Christopher Carter.  Plaintiffs argue that because Mr. Fuller and Mr.

20   Carter are governors of Mountain Run, they have taken steps to conduct business in Washington

21   and made efforts to collect Plaintiffs' debt while Plaintiffs resided in Washington.  However,

22   Plaintiffs' argument merges Mountain Run's conduct, as a corporate entity, with Mr. Carter and

23   Mr. Fuller's conduct, as governing members, without offering grounds for disregarding the

24

1    corporate entity.  Further, the authorities that Plaintiffs cite demonstrate courts exercising

2    jurisdiction over out of state collection agencies,[3] they do not support extending jurisdiction over

3    the governors of those business entities.

4        Alternatively, Plaintiffs argue that Mr. Fuller and Mr. Carter waived any objection to

5    personal jurisdiction and stipulated to the jurisdiction of a Washington court by sending an email

6    to Plaintiffs' counsel upon receiving service of the Summons and Complaint, in which Mr.

7    Carter stated, "Feel free to get a default."  (Dkt. No. 35 at 3.)  However, Plaintiffs fail to provide

8    any reasoning as to why the Court should interpret "get a default" as implied consent to being

9    hailed to Washington to defend against Plaintiffs' action.

10        Therefore, it would not be reasonable for this Court to exercise personal jurisdiction over

11    Mr. Carter and Mr. Fuller.  As the Court lacks personal jurisdiction, Plaintiffs' claims against

12    Mr. Carter and Mr. Fuller should be dismissed without prejudice.

13    **B.  Default Judgment**

14        After entry of default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b).

15    The general rule upon default is that well-pled allegations in the complaint regarding liability are

16    deemed true.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  However,

17    defaulting defendants are not considered "to admit facts that are not well-pleaded or to admit

18    conclusions of law."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal

19

20    [3] Plaintiffs cite *Michel v. Am. Capital Enter., Inc.*, 884 F.2d 582 (9th Cir. 1989), *Purco Fleet Serv., Inc. v. Idaho State Dep't of Fin.*, 90 P.3d 346 (Idaho 2004), *Fabio v. Diversified Consultants, Inc.*, No. 13-cv-00524-WMC, 2014 WL 713104 (W.D. Wis. Feb. 25, 2014) (Dkt. No. 35 at 5.)  All of these cases involved district courts exercising personal jurisdiction over out-of-state collection companies, not their owners or governors in their personal capacities. Plaintiffs also cite to *Stone v. Talan & Ktsanes*, No. Civ. 91-244-FR, 1991 WL 134364 (D. Or. July 2, 1991), which involved two attorneys who resided out of state and tried to collect from a debtor who resided in the forum state.  Because this case did not involve a corporate entity, it is not applicable to the matter at issue.

quotation and citation omitted).  Further, allegations related to damages must be supported with evidence.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 55(b)(2)(B).  A "district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the Court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## C. *Eitel* Factors

The majority of the *Eitel* factors weigh in favor of granting Plaintiffs' motion for default judgment against Mountain Run for its violations of the FCRA and FDCPA.  Default judgment is not appropriate for Plaintiffs' claim under the CPA because Plaintiffs do not establish the required elements of a valid CPA claim.

### Factor 1: Prejudice to Plaintiff

Plaintiffs would suffer prejudice absent resolution of their claims through default judgment.  Because Mountain Run purposefully failed to respond to the action, Plaintiffs can access their requested remedies under the FCRA and FDCPA only through entry of a default judgment.

### Factors 2 and 3: Merits of Plaintiffs' Claims and Sufficiency of Complaint

The second and third *Eitel* factors are generally considered together.  *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  Accordingly, the Court evaluates validity of each of Plaintiffs' three claims below.

1

2

### i.  *Fair Credit Reporting Act Claim*

Section 1681s-2 of the FCRA imposes certain responsibilities on "furnishers"—sources

3  that provide credit information to credit reporting agencies.  *Gorman v. Wolpoff & Abramson,*

4  *LLP, et al.*, 584 F.3d 1147, 1153 (9th Cir. 2009).  "After receiving notice [from a credit reporting

5  agency] of a dispute with regard to the completeness or accuracy of any information provided by

6  a [furnisher] to a consumer reporting agency, the [furnisher] shall … conduct an investigation

7  with respect to the disputed information."  15 U.S.C. § 1681s-2(b)(1)(A); *see also Gorman*, 584

8  F.3d at 1154.  A furnisher's investigation must be reasonable; however, an investigation is not

9  necessarily unreasonable because it results in an inaccurate conclusion.  *Drew v. Equifax Info.*

10  *Serv.,* LLC, 690 F.3d 1100, 1110 (9th Cir. 2012) (citing *Gorman*, 584 F.3d at 1155-57).  "The

11  burden of showing that the investigation was unreasonable is on the plaintiff."  *Rogers v. JP*

12  *Morgan Chase Bank, N.A.*, No. C11-1689-JLR, 2012 WL 2190900, at *7 (W.D. Wash. June 13,

13  2012).

14  Mountain Run provided information about Plaintiffs' Monitronix/Brinks debt to

15  Experian; thus, it qualifies as a furnisher.  Plaintiffs disputed the account information to Experian

16  four times.  Experian notified Mountain Run about each of Plaintiffs' disputes, which triggered

17  Mountain Run's obligation to investigate the accuracy of Plaintiffs' account information.

18  Because Mountain Run has failed to appear, the Court does not have details regarding Mountain

19  Run's investigation or failure to investigate.  However, Mountain Run's certification of the

20  accuracy of Plaintiffs' account four times within 24 hours of receiving notice of Plaintiffs'

21  disputes, despite the fact that the delinquency date of the underlying debt was April 11, 2011,

22  supports the conclusion that Mountain Run failed to conduct any meaningful investigation into

23  the material details of the account information.  As a result, Plaintiffs have successfully pled

24

facts that establish Mountain Run violated the FCRA by failing to reasonably investigate Plaintiffs' disputed accounts.

### ii. Fair Debt Collection Practices Act Claim

The FDCPA prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. Prohibited conduct includes the false representation of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A)) and "[c]communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (15 U.S.C. § 1692e(8)).  Liability under the FDCPA for falsely representing character, amount, or legal status of debt can be predicated upon conduct that was neither knowing nor intentional. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006)

The FDCPA defines "debt collectors" in two alternative ways:

(1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "[any person] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir.), *cert. denied sub nom. DNF Assocs., LLC v. McAdory*, 141 S. Ct. 627, 208 L. Ed. 2d 231 (2020) (quoting 15 U.S.C. § 1692a(6)).  An entity qualifies as a debt collector under the first prong, referred to as the "principal purpose prong," when debt collection is the "business's dominant, or principal, objective." *Id.* at 1093.

Plaintiffs state that the "principal purpose of [Mountain Run's] business is the collection of defaulted accounts originally owed to another."  (Dkt. No. 1 at 16.)  Further, Plaintiffs assert that:

1
2
3

> [Mountain Run's] business model consists of purchasing portfolios of ancient debts for pennies on the dollar, artificially extending the credit reporting period by re-aging the accounts in the portfolio to reflect more recent dates of default, and then credit reporting the accounts in attempt to damage consumers' credit reports as a means to threaten, harass, and intimidate consumers into paying the ancient and unenforceable debts.

4
5

(Dkt. No. 1 at 2.)  Thus, Plaintiffs have demonstrated that Mountain Run is a debt collector under the principal purpose prong of the FDCPA.

6
7
8
9
10

Plaintiffs argue that Mountain Run violated the FDCPA by providing false information to Experian.  Specifically, Plaintiffs allege that, because credit agencies do not report debts that are older than seven and a half years, Mountain Run changed the date of default to a more recent date in order ensure Plaintiffs' Monitronix/Brinks debt appeared on their credit reports.[4]  (*See* Dkt. No. 1 at 2-3.)

11
12
13
14
15
16

Plaintiffs' claim is similar to that articulated in *Daley v. A&S Collection Assoc., Inc.*, 717 F. Supp. 2d 1150 (D. Or. 2010).  In *Daley*, the district court found a debt collector liable for violating 15 U.S.C. § 1692e(8) where it reported a false delinquency date to a credit reporting agency, which caused the account to appear on the plaintiff's credit report even though the debt was older than seven years.  *Id.* at 1155.

17
18

---

19
20
21
22
23
24

[4] Plaintiffs also allege that Mountain Run reported Plaintiffs' debt under "Mountain Run Solutions" to Experian and under "Perfection Collections LLC" to Trans Union.  However, the Court is without evidence to determine the validity of Plaintiffs' assertion apart from the fact that Mr. Miyata's credit report shows the same address for both entries.  (*See* Dkt. Nos. 31-6 at 1; 31-8 at 2-3.)  Further, Plaintiffs allege that Mountain Run is "a/k/a and d/b/a Perfection Collection, LLC," which would mean that Mountain Run did not provide a false account name.  (*See* Dkt. No. 1 at 5.)  Additionally, Plaintiffs allege that the account balance for their Monitronix / Brinks account was $417, and Mountain Run falsely increased it to $1,155.  (*See* Dkt. No. 39 at 3.)  However, there is no evidence confirming the balance at the time that Mountain Run purchased the debt.  Finally, Plaintiffs allege but provide no evidence that Mountain Run changed their account numbers.

1    Here, Plaintiffs testified their default on the Monitronix/Brinks debt occurred in 2010.

2    They, therefore, assert the date of default prevented the debt from being included on their credit

3    reports.  (Dkt. No. 1 at 2-3.)  Although Plaintiffs do not provide direct evidence of the date of

4    delinquency that Mountain Run reported to Experian, one can presume that Mountain Run

5    reported a false date of delinquency to Experian given that Plaintiffs' Experian credit reports

6    show that their Mountain Run account is scheduled to remain on their credit reports until January

7    2021.  (*See* Dkt. No. 38-1 at 2.)  Because the FCRA generally prevents credit reporting agencies

8    from including most debts older than seven and a half years,[5] the Court finds that Mountain Run

9    provided a false date of delinquency.  This is a FDCPA violation.  *See Clark*, 460 F.3d at 1176.

10        ### iii. Washington Consumer Protection Act Claim

11        Washington's CPA provides that "[u]nfair methods of competition and unfair or

12   deceptive acts or practices" are prohibited in trade and commerce.  Wash. Rev. Code §

13   19.86.020.  To establish a CPA claim, a plaintiff must allege the five elements: (1) an unfair or

14   deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4)

15   injury to plaintiff in their business or property, and (5) causation.  *Hangman Ridge Training*

16   *Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

17

18

---

19   [5] The FCRA states in relevant part "no consumer reporting agency may make any consumer
     report containing … [a]ccounts placed for collection or charged to profit and loss which antedate
20   the report by more than seven years." 15 U.S.C. § 1681c(a)(4).  The FCRA further provides:

21        The 7-year period referred to … with respect to any delinquent account that is
          placed for collection (internally or by referral to a third party, whichever is earlier),
22        charged to profit and loss, or subjected to any similar action, upon the expiration of
          the 180-day period beginning on the date of the commencement of the delinquency
23        which immediately preceded the collection activity, charge to profit and loss, or
          similar action.

24   15 U.S.C. § 1681c(c)(1).

ORDER ON MOTION FOR DEFAULT JUDGMENT - 11

Regarding the injury element of a CPA claim, plaintiffs must demonstrate injury to their business or property—personal injuries will not suffice and damages for emotional distress are not recoverable. *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, n. 5 (Wash. 2009).  A showing of minimal expenses will satisfy the injury requirement and "[p]ecuniary losses occasioned by inconvenience may be recoverable as actual damages." *Id.* at 899; *see also McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1098 (W.D. Wash. 2013) (finding that "investigation expenses and other costs associated with dispelling the uncertainty created by defendants' deceptive conduct sufficiently establish injury under the CPA[.]").

Here, Plaintiffs claim as their injury five hours of personal time Mr. Miyata invested in disputing and investigating Mountain Run's allegedly deceptive conduct.  (Dkt. No. 30 at 4).  The Court is unaware, and Plaintiffs have not provided, published cases or authority supporting their contention that time investigating and disputing an erroneous credit report entry is sufficient to establish a CPA injury, without providing associated costs or marginal expenses.  Unlike the plaintiff in *Panag*, Plaintiffs allege no out-of-pocket expenses or loss of profits.  Instead, Plaintiffs exclusively allege five hours of personal time.  (Dkt. No. 40 at 5.)  Accordingly, the Court finds that Plaintiffs have failed to establish an injury to property or business, and therefore, have not satisfied the required elements of a CPA claim.  The Court DENIES Plaintiffs' CPA claim without prejudice.

**Factor Four: Sum of Money at Stake**

*i.   Actual Damages under the FCRA and FDCPA*

The FCRA holds furnishers who negligently fail to comply with statutory requirements liable to any customer for actual damages they sustained as a result of the failure.  15 U.S.C. § 1681o(a)(1).  Similarly, the FDCPA makes debt collectors liable to any person for "any actual

damages sustained by such person." 15 U.S.C. § 1692k(a)(1).  Emotional distress damages are recoverable under the FCRA.  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  Courts in the Ninth Circuit have also held that, as an analogous statute to the FCRA, the FDCPA allows recovery for emotional distress.  *See, e.g., Smart v. Emerald City Recovery, LLC*, No. C18-0448-JCC, 2019 WL 366205, *2 (W.D. Wash. Jan. 30, 2019).

Plaintiffs request $50,000 in damages for emotional distress caused by Mountain Run's FCRA and FDCPA violations, which provides $25,000 for each Mr. Miyata and Ms. Campbell. (Dkt. No. 30 at 5.)  At the damages hearing, Plaintiffs testified to the emotional distress they experienced while attempting to correct the erroneous Mountain Run collection account appearing on their Experian credit reports.  Plaintiffs allege that Mountain Run's non-compliance caused them significant emotional distress as well as damage to their credit.  (Dkt. No. 30 at 5.) The couple argued and blamed one another for the account.  (*Id.*)  Because extended family resided with Plaintiffs at the time, their arguments were overheard.  Their stress was compounded by the fact that Ms. Campbell was pregnant and expecting their second child, with a toddler to care for at home.  (Dkt. No. 30 at 4.)  Additionally, at the time, Plaintiffs were trying to keep their credit scores as high as possible to secure the best terms for a possible home loan. (*Id.*)  Ms. Campbell experienced multiple sleepless nights due to anxiety over whether they would be able to resolve the dispute.  (Dkt. No. 40 at 5.)

Although Plaintiffs' testimony establishes the emotional distress Plaintiffs experienced while attempting to resolve their dispute, the Court finds that their statements do not support an award of $50,000.  *See Smart v. Emerald City Recovery,* LLC, No. C18-0448-JCC, 2019 WL 366205, *2 (W.D. Wash. Jan. 30, 2019) (awarding the plaintiff $5,000 in damages caused by the defendant's FDCPA violation for plaintiff's embarrassment, headaches, nausea, nervousness,

insomnia, anxiety, and other forms of distress).  Therefore, the Court awards Plaintiffs emotional distress damages in the amount of $5,000 for each Plaintiff, for a total of $10,000.

Plaintiffs also seek $25,000 in punitive damages for Mountain Run's allegedly willful violations of the FCRA.  (Dkt. No. 30 at 6.)  However, Plaintiffs fail to allege facts or provide evidence to support their contention that Mountain Run's violation was willful as opposed to negligent.  Accordingly, the Court finds punitive damages inappropriate in this case.

Further, Plaintiffs seek $2,000 in statutory damages under the FDCPA.  (Dkt. No. 30 at 6-7.)  A court considers the following factors in assessing statutory damages: the frequency and persistence of the violation; the nature of the noncompliance; and "the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).  Although Plaintiffs have not shown that Mountain Run knowingly filed a false date of delinquency with credit agencies, the Court finds that statutory damages are appropriate because Mountain Run failed to direct removal of the erroneous tradeline and allowed it to damage Plaintiffs' credit score for several months.  Thus, the violation was persistent.  As a result, the Court awards $2,000 in statutory damages, $1,000 per Plaintiff.

Accordingly, the sum of money at stake, $10,000 in actual damages and $2,000 in statutory damages, supports entry of a default judgment as it is reasonable given the allegations against Mountain Run.

**Factors 5 and 6: Possibility of Dispute of Material Facts and Whether Default is Due to Excusable Neglect**

The record contains no evidence indicating a dispute of material facts.  Nor is there reason to conclude that Mountain Run's failure to respond to the summons occurred due to excusable neglect.  Plaintiffs properly served Mountain Run's registered agent with a copy of the

complaint and summons.  Nevertheless, Mountain Run failed to appear.  Thus, the fifth and sixth *Eitel* factors favor entry of default judgment.

### Factor 7: Strong Policy in Favor of Decision on the Merits

The last *Eitel* factor weighs against entry of default judgment due to the courts' strong preference to resolve claims on the merits.  However, this single factor is outweighed by the preceding points that favor entry of default judgment in this case.

### III.    CONCLUSION

Accordingly, and having considered Plaintiffs' motion and the remainder of the record, the Court finds and ORDERS that:

1. Plaintiffs' motion for default judgment (Dkt. No. 28) is GRANTED, as follows: Default Judgment is ENTERED against Mountain Run Solutions, LLC in the amount of $10,000 ($5,000 each Plaintiff) for violating the FCRA and $2,000 ($1,000 each Plaintiff) for violating the FDCPA; and

2. Plaintiffs' motion for default judgment (Dkt. No. 28) is DENIED, as follows: Plaintiffs CPA claim against Mountain Run Solutions, LLC is DISMISSED without prejudice for failing to state a claim.

3. The claims asserted against Brian Fuller and Christopher Carter are DISMISSED without prejudice for lack of personal jurisdiction.

4. Plaintiffs shall submit a motion for attorneys' fees and costs within no later than February 24, 2022.

Dated this 14th day of February, 2022.

David G. Estudillo
United States District Judge